IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CARLA ANITA BROWN, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CAROLYN W. COLVIN, )<br>Commissioner of Social Security, )<br>)<br>Defendant. )<br>) | Civil Action No. 1:16-94-GMS |

**MEMORANDUM**

## I. INTRODUCTION

On October 19, 2011, Plaintiff Carla Anita Brown ("Brown") filed for disability insurance benefits under Title II, 42 U.S.C. §§ 401-433, and for supplemental security income under Title XVI, 42 U.S.C. §§ 1381-1383f. Brown originally asserted she had become disabled as of December 5, 2008 due to osteoarthritis, asthma, high blood pressure, sleep apnea, anemia, and bilateral knee pain. Her claims were denied initially on April 16, 2012, and upon reconsideration on October 15, 2012. Brown timely requested a hearing before an administrative law judge ("ALJ"), which was held on June 2, 2014. The ALJ issued a partially favorable decision on August 18, 2014, finding that Brown was disabled on June 1, 2014 and after, but not before. (D.I. 9-2 at 33). Because Brown was considered disabled as of June 1, 2014, she was only entitled to supplemental security income, not disability insurance benefits. *Id.* Disability insurance benefits were only available through the date last insured—March 31, 2014.[1] The

---

[1] "To establish a period of disability, you must have disability insured status in the quarter in which you become disabled or in a later quarter in which you are disabled." 20 C.F.R. § 404.131. As such, if a claimant satisfies the

Appeals Council declined Brown's request for subsequent review on December 28, 2015. Having exhausted all administrative remedies, Brown filed a complaint with the court seeking review pursuant to 42 U.S.C. § 405(g) on February 17, 2016. (D.I. 2). The Commissioner of the Social Security Administration ("the Commissioner") timely answered on June 10, 2016. (D.I. 8). Brown filed for summary judgment on August 1, 2016, (D.I. 12), and the Commissioner cross-moved for summary judgment on September 30, 2016. (D.I. 14). Because the court finds that the ALJ's decisions were supported by substantial evidence as addressed below, it will deny Plaintiff's motion and grant summary judgment in favor of the Commissioner.

## II. BACKGROUND

Brown alleges she has been disabled since December 5, 2008. (D.I. 15 at 8). At the time of the administrative hearing, Brown consulted multiple doctors for back, knee, and leg pain stemming from lumbar radiculopathy. (D.I. 12 at 6). Apart from epidural steroid injections, Brown never had surgery, but underwent physical therapy and took prescribed medications. (D.I. 12 at 10). On August 18, 2014, the ALJ released his decision currently in dispute. (D.I. 9-2 at 35).

### A. Medical History

#### 1. Dr. McCrossan's Assessments

Brown went to Dr. McCrossan ("McCrossan") with complaints about back pain after a January 2011 motor vehicle accident. (D.I. 12 at 6). McCrossan conducted several physical examinations; McCrossan noted lumbar tenderness on the left side of Brown's body, and discomfort in Brown's right knee. *Id.* Despite prescribing medication and physical therapy, McCrossan noted the knee pain and back pain persisted. *Id.* McCrossan also wrote that Brown's

---

medical requirements for disability after the date last insured, they will not be entitled to disability insurance benefits.

leg pain "has remained disabling." (D.I. 9-10 at 55). However, McCrossan consistently noted that Brown had a normal gait. (D.I. 9-9 at 45, 50, 52, 55, 57).

### 2. Dr. Wilson's Assessments

Dr. Wilson ("Wilson") diagnosed Brown with lumbar radiculopathy with pain and swelling in the left leg. (D.I. 9-11 at 28). Based on the information gathered, Wilson estimated that Brown could sit for two to four hours during the course of an eight hour workday, and could stand or walk for approximately one hour. *Id.* In addition, Wilson estimated that Brown should alternate between sitting and standing every fifteen to twenty minutes to relieve pain. *Id.* Wilson also concluded that Brown never lift more than twenty-five pounds, that she rarely lift twenty pounds, that she could occasionally lift ten pounds, and could frequently lift less than ten pounds. *Id.* at 29. Due to her findings, Wilson classified Brown as disabled, as evidenced in a note to the Wilmington Housing Authority declaring she should be "exempt from community service due to disability." *Id.* at 21.

### B. ALJ Findings

In his August 18, 2014 decision, the ALJ applied the regulatory five-step sequential evaluation based on the evidence on record. (D.I. 9-2 at 24–34). If all five steps are satisfied, then Brown would be classified as disabled, but if any steps fail, then Brown would not be classified as disabled. *Id.* at 26. At step one, he determined that Brown did not engage in substantial gainful activity. *Id.* at 27. At step two, he concluded that Brown had several severe impairments, including "degenerative disc disease of the spine, [and] degenerative joint disease of the bilateral knees." *Id.* At step three, he determined Brown's impairments did not equal the severity of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at 28. At step four, he concluded that Brown could not return to her past work given her impairments. *Id.*

3

At step five, he determined that, despite Brown's impairments, she could still attain work available in significant numbers in the national economy.[2] (*Id.* at 27, 33–34). To reach this conclusion, the ALJ relied on a vocational expert, Linda Augins, who testified that Brown could work as an addresser, a telephone information clerk, or table worker. (*Id.* at 32–33, 63, 65–66).

The ALJ also used the medical evidence to conclude Brown was not disabled. After reviewing the medical evidence, the ALJ reasoned that "the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible." (D.I. 9-2 at 30). To support his conclusion, the ALJ pointed out that "the claimant's objective examination findings [from her doctors] have been quite normal on many occasions" in areas including respiration, range of motion for lumbar and knees, motor function, strength, sensation, reflexes, posture, gait, and coordination. *Id.* In addition, the ALJ noted that Brown did not always follow treatment recommendations by her doctors. *Id.* The ALJ also considered the discrepancies between Brown's complaints and the medical examinations; one such discrepancy was Brown's complaints of back and leg pain stemming from lumber radiculopathy did not match the CT scan performed on February 10, 2012 indicating a radicular-type problem would not cause Brown's symptoms. *Id.* at 30–31; (D.I. 9–13 at 34). The ALJ also noted that McCrossan's medical conclusion that Brown's leg pain "remained disabling" did not conform to McCrossan's findings during her multiple physicals that Brown had a normal gait. (D.I. 9-10 at 55; D.I. 9-9 at 45, 50, 52, 55, 57).

Regarding Wilson's conclusions to the Wilmington Housing Authority, the ALJ gave the

---

[2] The ALJ noted that prior to June 1, 2014, Brown was considered a "younger individual" according to 20 C.F.R. § 404.1563(c). (D.I. 9-2 at 31). According to the ALJ, given Brown's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that Brown could have performed. *Id.* On and after June 1, 2014, Brown's age category changed to "closely approaching advanced age," 20 C.F.R. § 404.1563(d), which the ALJ found necessitated a finding of disabled. *Id.* at 33.

4

evidence little weight because "the definition of disability used on [that] form [was] not comparable to the sequential evaluation process used for determining such status" under the Social Security Act. (D.I. 9-2 at 31). However, the ALJ assigned Wilson's other medical conclusions—for example, Brown's ability to carry weight or length of time sit or stand—moderate weight. *Id.* Regarding McCrossan's conclusions that Brown's symptoms were disabling, the ALJ gave the evidence little weight because they were conclusions "address[ing] an issue reserved to the Commissioner" and were inconsistent with other medical findings in the record such as those discussed above. *Id.*

## III. STANDARD OF REVIEW[3]

A reviewing court must uphold the Commissioner's factual decisions if they are supported by "substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3); *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992); *see also Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) (stating "[w]here the ALJ's findings of fact are supported by substantial evidence, . . . [the court is] bound by those findings, even if . . . [it] would have decided the factual issue differently"). "Substantial evidence" means more than "a mere scintilla." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* The inquiry is not whether the reviewing court would have made the same determination, but, rather, whether the Commissioner's conclusion was reasonable. *See Brown v. Bowen*, 845 F.2d 1211, 1213 (3d

---

[3] While the court requires the submission of cross-motions for summary judgment, the summary judgment standard in no way impacts the court's substantial evidence analysis. The court is aware that its sole function here is to determine if the ALJ's findings are supported by substantial evidence in the record. The court uses cross-motions for summary judgment as a procedural tool to apprise itself of the record below and to efficiently facilitate resolution of the issues on appeal. *Cf. Nolan v. Heald Coll.*, 551 F.3d 1148, 1154 (9th Cir. 2009) (noting that where a court does not consult evidence outside of the administrative record "a motion for summary judgment is merely the conduit to bring the legal question before the district court and the usual test of summary judgment, such as whether a genuine dispute of material fact exists, does not apply").

5

Cir. 1988). Thus, substantial evidence may be slightly less than a preponderance. *See Hanusiewicz v. Bowen*, 678 F. Supp. 474, 476 (D.N.J. 1988). If the ALJ's decision is supported by substantial evidence, this court must give deference to the ALJ's determination, and uphold the ruling as is. *Monsour Medical Ctr. v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986). The court must also give deference to the interpretation of statutes by the ALJ, and defer to the interpretation "so long as it is reasonable." *Id.* at 1191.

In considering evidence supporting an agency's decision, "the grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based." *Fargnoli*, 247 F.3d at 44 n.7. Moreover, "a single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983).

## IV. DISCUSSION

The Social Security Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). The Commissioner promulgated regulations for determining disability by application of a five-step sequential analysis. *See* 20 C.F.R. § 404.1520. The ALJ, the reviewing Appeals Council, and the Commissioner evaluate each case according to this five-step process until a finding of "disabled" or "not disabled" is obtained. *See id.* at § 404.1520(a). The five-step process requires that the Commissioner make a number of inquiries:

> [T]he [Commissioner] determines first whether an individual is currently engaged in substantial gainful activity. If that individual is engaged in substantial gainful activity, he will be found not disabled regardless of the medical findings. If an individual is found not to be engaged in substantial gainful activity, the

6

[Commissioner] will determine whether the medical evidence indicates that the claimant suffers from a severe impairment. If the [Commissioner] determines that the claimant suffers from a severe impairment, the [Commissioner] will next determine whether the impairment meets or equals a list of impairments in Appendix I of sub-part P of Regulations No. 4 of the Code of Regulations. If the individual meets or equals the list of impairments, the claimant will be found disabled. If he does not, the [Commissioner] must determine if the individual is capable of performing his past relevant work considering his severe impairment. If the [Commissioner] determines that the individual is not capable of performing his past relevant work, then she must determine whether, considering the claimant's age, education, past work experience and residual functional capacity, he is capable of performing other work which exists in the national economy.

*Brewster v. Heckler*, 786 F.2d 581, 583–84 (3d Cir. 1986) (citations omitted).

The sequential analysis necessitates evaluation of every medical opinion in the case record. 20 C.F.R. 404.1527(b)–(c). When an ALJ is confronted with conflicting medical opinions, the ALJ must decide whom to credit and "give some reason for discounting the evidence she rejects." *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). ALJ's consider a variety of factors to determine the weight given to each medical opinion: (1) the examining relationship; (2) the treatment relationship; (3) the supportability of the opinion; (4) the specialization of the treating source; and (5) any other factors that tend to support or contradict the opinion. 20 C.F.R. 404.1527(c)(1)-(6). The ALJ need not supply an exhaustive explanation for rejecting evidence or according it little weight; "in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d. Cir. 1981). Opinions on some issues are not considered medical opinions, however, because they infringe on the decision-making powers reserved to the Commissioner. 20 C.F.R. § 404.1527(d). It is the Commissioner's duty to review the evidence and determine if a claimant meets the statutory definition of disability. *Id.* (d)(1). Statements by a treating source that a claimant is "disabled" or "unable to work" are thus accorded little, if any, weight. *Id.*

The court has distilled the dispute in this case to two main issues: 1) whether the ALJ's

7

decision to discount the opinions of both Dr. McCrossan and Dr. Wilson was supported by substantial evidence; and 2) whether the ALJ needed to afford Brown's testimony additional weight because of her extensive work history. The court will proceed by analyzing each issue in turn.

### A. The Medical Opinions of Drs. McCrossan and Wilson

Brown argues that the ALJ erred by failing to provide specific reasons for discounting the opinions of Dr. McCrossan and Dr. Wilson as required under 20 C.F.R. § 404.1527. (D.I. 12 at 5). According to Brown, 20 C.F.R. § 404.1527 requires that, if the ALJ's assessment conflicts with the submitted medical opinions, the ALJ must explain why the medical opinions were not adopted. *Id.* Brown argues, therefore, that the ALJ needed to explain in detail why the medical opinions, such as Wilson's letter to the Wilmington Housing Authority, were given the weight he assigned.

Brown's argument is not consistent with the entirety of the statute; rather, Brown's argument focuses on one particular section at the expense of the remaining sections. *See id.* at 5–11. Although 20 C.F.R. § 404.1527(c) lists five factors for an ALJ to consider when evaluating a medical opinion, the next section, 20 C.F.R. § 404.1527(d), clarifies that statements proclaiming disability or inability to work—opinions on issues reserved to the Commissioner—will not influence the ALJ's final determination. Wilson's letter to the Wilmington Housing Authority, which diagnosed Brown as disabled, was reasonably classified as holding little weight. For similar reasons, McCrossan's medical conclusion that Brown's leg made her disabled was also reasonably given little weight by the ALJ.

Brown also points to the ALJ's treatment of Wilson's medical form data, which was given moderate weight, as evidence that the ALJ erred by not explaining in detail why his decision went

8

against the recommendations made by Wilson. Tr. at 568–70. Though the ALJ wrote one sentence on why he assigned Wilson's submission moderate weight, it sufficed to explain his reasoning. The ALJ is not required to supply a comprehensive explanation for his rejection of evidence. *See Cotter*, 650 F.2d at 482. Instead, he is only required to do what he did here: explain why he rejected probative evidence in enough detail that the reviewing court can determine whether his reasons were proper. *Id.* The ALJ explained that "Dr. Wilson's opinion is still excessively restrictive, when considered in connection with the conservative treatment history and many normal objective findings set forth above." (D.I. 9-2 at 30). Brown's objective examinations revealed "normal respiratory function, no knee effusion, stable bilateral knees, full knee range of motion, normal lumbar range of motion, negative straight leg raising, normal motor function, normal strength, normal sensation, normal reflexes, normal posture and gait, and normal coordination." *Id.* at 30. Further, Brown never underwent surgery nor did she receive a recommendation to do so in the applicable period. *Id.* The court finds such an explanation sufficient for it to conclude that the ALJ's determination is supported by substantial evidence.

Brown also contends that the ALJ should have ordered a medical expert to testify if he believed McCrossan's and Wilson's opinions were inconsistent with the underlying record. (D.I. 12 at 16). An ALJ is not required to call a medical expert to testify at a claimant's hearing before coming to a decision; the regulations give the ALJ the discretion to call for a medical expert. *Miguel v. Comm'r of Soc. Sec.*, 129 F. App'x 678, 680 (3d Cir. 2005); 20 C.F.R. § 404.1529(b). There are two exceptions to the ALJ's discretion regarding medical experts: (1) when no new medical evidence is received but the ALJ believes a judgment of equivalence may be reasonable, or (2) additional medical evidence is given to the ALJ, and the new evidence could change the State agency's medical or psychological expert's original finding that the impairment is not

equivalent to an impairment listed in the list of impairments. SSR 96-6p, 61 Fed. Reg. 34466-01 (July 2, 1996).[4] In this case, the ALJ was not faced with either possibility, concluding "the clinical signs and diagnostic findings clearly show that this impairment does not meet or medically equal any of the entries in the Listing of Impairments." (D.I. 9-2 at 29). Since the ALJ's conclusions are supported by substantial evidence, the ALJ did not err by not calling for a medical expert. *Jakubowski v. Comm'r of Soc. Sec.*, 215 F. App'x 104, 107 (3d Cir. 2006).

Brown also contends that the ALJ should have contacted McCrossan and Wilson to resolve any questions he had regarding their conclusions. (D.I. 12 at 16). Statutory regulations do not require an ALJ to contact a doctor if an ambiguity exists; if the ALJ can make a determination based on substantial evidence in the record, the ALJ does not need to contact a doctor for clarifications. 20 C.F.R. §§ 404.1520b(b), 416.920b(b).

Finally, Brown contends that the ALJ should have sent the entire record back to the State agency, or to a medical expert for further review. (D.I. 12 at 16). Such action was not necessary since the record was complete; the ALJ had a complete record in which to form a conclusion, and his conclusion was based on substantial evidence within the record. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). As such, the ALJ's decision was supported by substantial evidence and he did not abuse his discretion by not ordering a medical expert.

### B. Brown's Work History

Brown also argues that the case should be remanded to allow for evidence of Brown's work history to be admitted. According to Brown, "the ALJ is required to consider a claimant's excellent work history." (D.I. 12 at 18). Although case law has indicated that strong work history can play

---

[4] The regulations regarding the ALJ's discretion on medical experts have been revised since Brown's appeal was filed. Although the court recognizes these changes have occurred, its decision will refer to and apply the regulations as they were when the ALJ made his decision, and when Brown's appeal was filed.

a role in the ALJ's decision, it only added to the claimant's credibility when substantial evidence of a disability already existed. *See, e.g., Dobrowolsky v. Califano*, 606 F.2d 403, 409 (3d Cir. 1979) (holding that the claimant's long work history bolstered the credibility of her pain allegations when the claimant's testimony was not contradicted by any medical evidence on record).

In the instant case, it is unlikely that Brown's work history would bolster her testimony because the ALJ noted clear discrepancies between the treating physicians' opinions and the objective medical evidence. Further, it appears that the ALJ was aware of Brown's work history, yet it played no part in his consideration. *See* Tr. 51–52 ("I can see that you had a fairly steady work history all the way until 2008 or so."). The court finds that the ALJ did not commit error by failing to consider or credit such evidence. Even if the court were to conclude that the ALJ should have explicitly considered Brown's long work history, case law has repeatedly held that failure to do so does not require remand. *See Salazar v. Colvin*, No. CIV.A. 12-6170, 2014 WL 6633217, (E.D. Pa. Nov. 24, 2014) ("The fact alone that claimant has a long work history does not require a remand, particularly when medical evidence does not support a claimant's testimony of the extent of her limitations."); *Lee v. Astrue*, No. CIV.A. 12-0782, 2012 WL 4932019 (E.D. Pa. Oct. 17, 2012); *Miller v. Astrue*, No. CIV.A. 10-2247, 2012 WL 2500326 (E.D. Pa. June 29, 2012). Therefore, the court finds Brown's argument unpersuasive.

## V. CONCLUSION

The ALJ's findings were supported by substantial evidence. The ALJ provided ample justification for the weight he accorded to Dr. McCrossan's and Dr. Wilson's medical opinions. The ALJ was also not obligated to consider Brown's long work history, especially in the situation where Brown's testimony clearly conflicted with objective medical evidence on the record. Thus,

the court will grant the Commissioner's motion for summary judgment, and deny Brown's motion for summary judgment.

Dated: June  13 , 2017

_____
UNITED STATES DISTRICT JUDGE